UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CANOPIUS US INSURANCE, INC. (FORMERLY OMEGA US INSURANCE, INC.) | § § § § | |
| Plaintiff, | § § | Civil Action No. _____ |
| vs. | § § § | |
| KATHRYN HOGAN, GREENE HOGAN INVESTMENTS, and NICHOLAS ROTHSCHILD | § § § § | |
| Defendants. | § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES, Plaintiff, Canopius US Insurance, Inc. (hereinafter "Canopius"), and files this Original Complaint for Declaratory Judgment against Kathryn Hogan ("Hogan" or "Insured"), Greene Hogan Investments ("GHI"), and Nicholas Rothschild ("Rothschild") (collectively "Defendants"), and in support thereof would respectfully show the following:

## I.    INTRODUCTION

1.    Canopius brings this action seeking a declaratory judgment that it has no obligation to provide coverage under Policy Numbers OUS011001190, OUS011001776, OUS011002517, and OUS011003065 (collectively the "Policies") for any damages that allegedly arose out of the construction, renovation, and sale of a residential property located at 333 Jackson Place, Corpus Christi, Texas (the "Property"). As an initial matter, the Policies should be voided due to a material misrepresentation by the Insured regarding her classification. The Insured disclosed herself as an individual buyer/seller of

real estate, but the underlying petition filed by Rothschild asserts the Insured was also acting as a general contractor. The Policies do not contemplate the risks associated with general contractor operations, and Canopius US does not even write general contractor policies. Thus, the Insured's misrepresentation is material, and the Policies should be voided. Furthermore, coverage does not exist with regard to the Policies as written. In particular, coverage does not exist under Policy Number OUS011001190 because the Property was not even purchased by the Insured and/or GHI until after the expiration of the policy period, and, therefore, no property damage occurred during the policy period. Coverage does not exist with regard to Policy Number OUS011001776 because the Property was owned by the Insured throughout the policy period and because exclusion j. (1) negates coverage for property damage to property the Insured owns. The Policies also do not provide coverage to the extent the following exclusions are applicable: (a) exclusion j. (1), (b) exclusion j. (2), (c) the Contractual Liability exclusion, (d) the Your Work exclusion, (e) the Impaired Property exclusion, (f) the Oral Contracts exclusion, (g) the Criminal, Fraudulent, Dishonest, or Malicious Acts exclusion, (h) the Fines, Penalties, and Punitive or Exemplary Damages exclusion, and/or (i) the Fungi or Bacteria Exclusion. Finally, the Policies do not provide insured status to GHI unless Hogan is the sole owner of the business, which, upon information and belief, is not the case. For these reasons, coverage is precluded under the Policies, and Canopius owes no duty to defend or indemnify Hogan or GHI in the underlying lawsuit filed by Rothschild.

## II.   PARTIES

2.      Canopius US Insurance, Inc. (formerly Omega US Insurance, Inc.) is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1450 East American Lane, Schaumburg, Illinois 60173.

3.      Kathryn Hogan is an individual who is domiciled in Texas and may be served with process at 353 Bermuda Place, Corpus Christi, Texas, or any other place where she may be found. Service of process is requested at this time.

4.      Greene Hogan Investments is a company doing business in Texas and may be served with process through its agent, Kathryn Hogan, at 353 Bermuda Place, Corpus Christi, Texas. Service of process is requested at this time.

5.      Nicholas Rothschild is an individual who is domiciled in Texas and may be served with process at 333 Jackson Place, Corpus Christi, Texas, or any other place where he may be found. Service of process is requested at this time.

## III.   JURISDICTION AND VENUE

6.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and this is an action between citizens of different states. Thus, diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1).

7.      Venue is proper under 28 U.S.C. § 1391(b)(1) in this judicial district because all Defendants reside in this judicial district and are residents of the State of Texas.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the negotiation and issuance of the Policy, as well as the alleged damages made the basis of the underlying lawsuit—occurred in this judicial district.

3

8.     This declaratory judgment action is properly before the Court pursuant to 28 U.S.C. § 2201(a) because it involves a Policy issued in this judicial district, is otherwise within the Court's subject-matter jurisdiction and involves an actual, substantial case or controversy between the Parties.

### IV.     FACTUAL BACKGROUND

**A.     The Underlying Lawsuit**

9.     In October 2012, the Insured purchased a residential property located at 333 Jackson Place, Corpus Christi, Texas. The Insured subsequently renovated the Property and sold it to Rothschild, with the closing occurring on or about March 27, 2013. Thereafter, Rothschild sued the Insured, alleging various serious problems with the Property and asserting causes of action for breach of contract, breach of express and implied warranties, violations of the Texas Deceptive Trade Practices Act, negligence, negligent misrepresentation, gross negligence, fraud by representation, nondisclosure and concealment, statutory fraud, promissory estoppel, and violations of the Texas Residential Construction Liability Act (the "underlying lawsuit"). See Rothschild's Third Amended Original Petition, attached hereto as Exhibit "A".

10.     The underlying petition alleges that the Insured purchases and renovates property for sale "as a general contractor." *See id.* The petition further asserts the Insured acted as both the seller of the Property at issue and as the general contractor with respect to the repair and renovation of said Property. *See id.*

11.     The Insured never communicated her capacity/classification as a general contractor to Canopius, which does not underwrite policies for general contractors. This

withholding of information by the Insured constitutes a material breach of contract warranting the voiding of the Policies.

      **B.    Canopius' Insurance Policies and Coverage Position to Date**

      12.    Policy Numbers OUS011001190, OUS011001776, OUS011002517, and OUS011003065 were issued to Kathryn Hogan for consecutive one-year policy periods running, respectively, from March 2, 2011 to March 2, 2012, March 2, 2012 to March 2, 2013, March 5, 2013 to March 5, 2014, and March 5, 2014 to March 5, 2015. The Policies provided Hogan with Commercial General Liability Coverage, subject to Policy provisions.

      13.    Gulf Coast Claims Service is a third party adjuster for Canopius. On December 22, 2015, Gulf Coast Claims Service sent a Denial of Coverage letter, attached hereto as Exhibit "B", to Hogan regarding Policy Numbers OUS011001190 and OUS011001776. Also on December 22, 2015, Gulf Coast Claims Service sent Hogan a Reservation of Rights letter, attached hereto as Exhibit "C", regarding Policy Numbers OUS011002517 and OUS011003065. The Reservation of Rights advised the Insured that Canopius would provide it with a defense in the underlying lawsuit, subject to a reservation of Canopius' rights to address coverage questions after further inquiry. In this regard, Canopius brings the current declaratory judgment action seeking a declaration from the Court that the Policies do not provide coverage for the underlying lawsuit for five main reasons:

          (1)    because the Policies should be voided due to a material misrepresentation in work classification by the Insured,

          (2)    because the Property was not purchased during the policy period of Policy Number OUS011001190, and, therefore, no property damage could have occurred during said policy period,

(3)     because exclusion j. (1) excludes coverage for property damage to property the Insured owns, and the Property was owned by the Insured throughout the policy period of Policy Number OUS011001776,

(4)     because exclusion j. (1), exclusion j. (2), the Contractual Liability exclusion, the Your Work exclusion, the Impaired Property exclusion, the Oral Contracts exclusion, the Criminal, Fraudulent, Dishonest, or Malicious Acts exclusion, the Fines, Penalties, and Punitive or Exemplary Damages exclusion, and/or the Fungi or Bacteria Exclusion apply to negate coverage under the Policies, and/or

(5)     because the Insured is not the sole owner of GHI, and, therefore, insured status is not afforded to GHI under the Policies.

Accordingly, Canopius further seeks a declaration from the Court that Canopius has no duty to defend or indemnify the Insured or GHI in the underlying lawsuit.

**(1)     The Policies should be voided due to a material misrepresentation by the Insured.**

14.     Section 705.004 of the Texas Insurance Code provides that an insurer may void coverage based on a misrepresentation on the insurance application if the misrepresentation was material to the risk and contributed to the event on which the policy became due. TEX. INS. CODE § 705.004; *Gouverne v. Care Risk Retention Group, Inc.*, No. 2-07-206, 2008 WL 2065835, at *4 (S.D. Tex. May 13, 2008). Additionally, the Texas Supreme Court has held that five elements must be satisfied for an insurer to deny coverage based on a misrepresentation made in an application for insurance: (1) a representation by the insured, (2) falsity of the representation, (3) reliance thereon by the insurer, (4) intent to deceive by the insured, and (5) materiality of the representation. *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980); *Gouverne*, 2008 WL 2065835, at *4; *Temcharoen v. United Fire Lloyds*, 293 S.W.3d 332, 341 (Tex. App.— Eastland 2009, pet. denied).

6

15.     Canopius would show the Court that the Insured materially misrepresented her work classification by not revealing her capacity as a general contractor and that, therefore, the Policies should be voided. To be sure, Canopius does not even underwrite insurance policies for general contractors, and the Policies do not contemplate the risks associated with general contractor operations or contain the typical endorsements found on policies issued to contractors. Had the Insured properly disclosed that she was serving as a general contractor, no Canopius policy would have been issued to the Insured at all. However, the Insured instead withheld her status as a general contractor in an attempt to deceive Canopius, which, in turn, relied on the false representations made in the Insured's application for insurance, including that she was an individual property owner classified as a lessor of real estate. As such, the Insured's misrepresentation is material, and the Policies should thus be voided, thereby precluding coverage for the underlying lawsuit, which arises out of the Insured's operations as a general contractor.

> **(2)     There is no coverage under Policy Number OUS011001190 for the underlying lawsuit because no property damage alleged in the underlying lawsuit could have occurred during the policy period of said Policy.**

16.     Additionally, and in the alternative, Canopius would show the Court that the Property at issue was not purchased by the Insured and/or GHI until after the expiration of Policy Number OUS011001190's policy period and that, therefore, no property damage alleged by Rothschild in the underlying lawsuit could have occurred during said Policy period. In this regard, the Policy's insuring agreement provides, in relevant part, as follows:

**1.     Insuring Agreement**

**. . .**

        **b.**    **This insurance applies to "bodily injury" and "property damage" only if:**

              **(1)**    **The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";**

              **(2)**    **The "bodily injury" or "property damage" occurs during the policy period; and**

              **. . .**

17.    As noted above, there could not have been any property damage to the Property during the policy period because the Insured and/or GHI did not purchase same until after expiration of the policy period. The policy period is from March 2, 2011 to March 2, 2012, and the residential Property at issue was not purchased until October 2012. The lack of any property damage during the policy period means the Insuring Agreement is not triggered, and the Policy therefore does not apply. Canopius has no duty to defend or indemnify Hogan or GHI in the underlying lawsuit under Policy Number OUS011001190.

        **(3)**    **There is no coverage under Policy Number OUS011001776 for the underlying lawsuit pursuant to exclusion j. (1).**

18.    Additionally, and in the alternative, Canopius would show the Court that Policy Number OUS011001776 does not provide coverage for the underlying lawsuit pursuant to exclusion j. (1), which negates coverage for property damage to property the Insured owns. The applicable provision reads as follows:

        **2.**     **Exclusions**

        **This insurance does not apply to:**

        **. . .**

        **j.**    **Damage To Property**

            **"Property damage" to:**

**(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;**
**. . .**

19.     The exclusion will apply to negate coverage for property damage to property owned by the Insured. The exclusion will also negate coverage for any cost or expenses incurred by the Insured or "any other person" for repair, replacement, enhancement, restoration of maintenance of the property. As noted, the Insured owned the Property during the applicable policy period, March 2, 2012 to March 2, 2013. To be sure, the Property was purchased in October 2012 and sold on or about March 27, 2013. The fact that the Insured owned the property when the alleged property damage occurred means that the exclusion will apply to negate coverage for same. Furthermore, to the extent any property damage is alleged to have occurred prior to the Insured's purchase of the Property, those allegations would not be covered under the Policy's Insuring Agreement for the same reasons discussed, *supra*, in paragraphs 16 and 17. Canopius owes no duty to defend or indemnify the Insured or GHI in the underlying lawsuit under Policy Number OUS011001776.

### (4)     There is no coverage under the Policies pursuant to several exclusionary provisions.

20.     Additionally, and in the alternative, Canopius would show the Court that several exclusionary provisions in the Policies apply to negate coverage with regard to the underlying lawsuit. Canopius would also show the Court that the Policies are all identical, and, therefore, the following discussion regarding several exclusionary provisions applies equally to all four Policies, regardless of whether coverage is otherwise

denied for the reasons set forth in paragraphs 16 through 19, *supra*. Specifically, exclusion j. (1), exclusion j. (2), the Contractual Liability exclusion, the Your Work exclusion, the Impaired Property exclusion, the Oral Contracts exclusion, the Criminal, Fraudulent, Dishonest, or Malicious Acts exclusion, the Fines, Penalties, and Punitive or Exemplary Damages exclusion, and/or the Fungi or Bacteria Exclusion are applicable to the underlying lawsuit. Therefore, coverage is precluded under the Policies pursuant to at least one of nine exclusionary provisions:

### (a) Exclusion j. (1)

21.     As discussed in paragraphs 18 and 19, *supra*, exclusion j. (1) negates coverage for property damage to property owned by the Insured. The exclusion also negates coverage for any cost or expenses incurred by the Insured or "any other person" for repair, replacement, enhancement, restoration of maintenance of the property. The fact that the Insured owned the Property when the property damage was allegedly occurring means the exclusion applies to negate coverage for same. Therefore, Canopius also has no duty to defend and no duty to indemnify for any property damage that occurred during the twenty-two day time period between the beginning of the policy period of Policy Number OUS011002517 on March 5, 2013 and the sale of the property on March 27, 2013.

### (b) Exclusion j. (2)

22.     In regard to the period subsequent to the sale of the Property, exclusion j. (2) negates coverage for property damage sold by the Insured. The exclusion provides, in relevant part, as follows:

**2.     Exclusions**

**This insurance does not apply to:**

. . .

**j.    Damage To Property**

**"Property damage" to:**

**. . .**

**(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;**

**. . .**

**Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.**

**. . .**

23.    The exclusion applies to negate property damage to the Property, as same was sold by the Insured. However, the exclusion also contains an exception for premises that are "your work". The Policy defines "your work" as follows:

**22.    "Your work":**

**a.    Means:**

**(1)    Work or operations performed by you or on your behalf; and**

**(2)    Materials, parts or equipment furnished in connection with such work or operations.**

**b.    Includes**

**(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and**

**(2)    The providing of or failure to provide warnings or instructions.**

24.     The definition of "your work" includes work or operations performed by the Insured or on the Insured's behalf, as well as materials, parts, or equipment furnished in connection with the work or operations. The Property at issue would constitute the Insured's work to the extent same included work, operations, materials, parts, or equipment. However, the language of the exception requires the entire premises to be the work of the insured before the exception applies. Here, the Insured did not build the entire residence. Rather, the Insured purchased the residence and then "repaired and renovated" it, as confirmed in the underlying petition. *See* Exhibit "A". Therefore, the exception is not applicable, and the exclusion is triggered. Canopius owes no duty to defend and no duty to indemnify for any property damage arising out of the residential Property sold by the Insured.

### (c)     The Contractual Liability Exclusion

25.     The Policies also contain a Contractual Liability exclusion, which negates coverage for property damage for which the Insured is obligated to pay by reason of the assumption of liability in a contract or agreement. The exclusion provides as follows:

**2.      Exclusions**

**This insurance does not apply to:**

**. . .**

**b.      Contractual Liability**

**"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:**

**(1)     That the insured would have in the absence of the contract or agreement; or**

**(2)** **Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:**

**(a)** **Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and**

**(b)** **Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.**

26.     The exclusion contains an exception for liability the Insured would have in the absence of a contract or agreement as well as liability assumed in an insured contract. The first exception to the exclusion applies to the Insured's tort liability. The exclusion thus does not apply to negate the Insured's contractual tort, or con-tort, liability. The second exception to the exclusion requires an insured contract. The Policy defines an insured contract as follows:

**9.** **"Insured contract" means:**

**a.** **A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";**

**b.** **A sidetrack agreement;**

**c.** **Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;**

13

d.     **An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;**

e.     **An elevator maintenance agreement;**

f.     **That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.**

**Paragraph f. does not include that part of any contract or agreement:**

(1)     **That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;**

(2)     **That indemnifies an architect, engineer or surveyor for injury or damage arising out of:**

(a)     **Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or**

(b)     **Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or**

(3)     **Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.**

14

27.     The definition of insured contract does not include a contract for the sale of a residence or a real estate contract. Therefore, the contract providing for the sale of the Property at issue does not constitute an insured contract, and the insured contract exception will not apply. As a result, the Contractual Liability exclusion applies to negate coverage for all pure contractual and/or con-tort liability, and Canopius owes no duty to defend and no duty to indemnify with regard to same.

**(d)     The Your Work Exclusion**

28.     The Policies also contain a Your Work exclusion, which provides, as follows:

**2.      Exclusions**

**This insurance does not apply to:**

**. . .**

**l.     Damage To Your Work**

**"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".**

**This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.**

29.     This exclusion negates coverage for property damage to the Insured's work. The exclusion does, however, contain an exception for work performed by the Insured's sub-contractors. Here, the Insured utilized sub-contractors. The exception is therefore triggered, and the exclusion will thus not apply to any property damage arising from work performed by sub-contractors. Nevertheless, the exclusion still applies to negate coverage for any property damage arising out of work performed by the Insured. Consequently, Canopius has no duty to defend and no duty to indemnify with regard to any property damage arising out of work performed by the Insured.

15

### (e)      The Impaired Property Exclusion

30.      The next applicable provision within the Polices is the Impaired Property

exclusion, which reads as follows:

> **2.      Exclusions**
>
> **This insurance does not apply to:**
>
> **. . .**
>
> **m.      Damage To Impaired Property Or Property Not Physically Injured**
>
> **"Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
>
> **(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**
>
> **(2)      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**
>
> **This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.**

31.      The exclusion applies to negate coverage for property damage to impaired

property. The Policy defines impaired property as follows:

> **8.      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:**
>
> **a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or**
>
> **b.      You have failed to fulfill the terms of a contract or agreement;**
>
> **if such property can be restored to use by:**

16

        a.      **The repair, replacement, adjustment or removal of "your product" or "your work"; or**

        b.      **Your fulfilling the terms of the contract or agreement.**

32.     The underlying petition alleges liability on behalf of the Insured as a result of general contractor activities. To the extent the Insured is liable as a general contractor, the Impaired Property exclusion negates coverage for property damage arising out of renovations performed by the Insured and/or her sub-contractors that incorporate the existing portions of the residence that are now allegedly defective because of the renovation work performed by the Insured and/or her sub-contractors. The exclusion also negates coverage for any property damage resulting from the Insured's failure to perform in accordance with the terms of the agreement(s) or contract(s) alleged in the underlying petition. Thus, Canopius has no duty to defend and no duty to indemnify with regard to property damage arising out of (1) any defect, deficiency, inadequacy, or dangerous condition in the Insured's or her sub-contractors' work on the residential Property at issue or (2) a delay or failure by the Insured or her sub-contractors to perform in accordance with the contracts or agreements alleged in the underlying petition.

**(f)    The Oral Contracts Exclusion**

33.     The Policies also include an Oral Contracts exclusion, which provides as follows:

        **(A)    Oral Contracts**

        **The definition of any "insured contract" is amended solely to apply to such contracts or agreements which existed in writing prior to an occurrence. In no event will this insurance apply to any allegation of liability assumed by the insured under an oral contract. Further, this insurance does not apply to claims arising out of breach of contract, whether oral or written, express or implied.**

34.     This exclusion provides that the Policies will not apply to any allegation of liability assumed by the Insured under an oral contract. Rothschild's allegations in the underlying petition are amorphous, and, therefore, to the extent any alleged oral contract was violated, the Policies would not provide coverage. Canopius thus has no duty to defend and no duty to indemnify in this regard.

        **(g)**   **The Criminal, Fraudulent, Dishonest or Malicious Acts Exclusion**

35.     The Policies also contain a Criminal, Fraudulent, Dishonest or Malicious Acts Exclusion, which provides, in relevant part, as follows:

        **(F)**   **Additional Exclusions**

        **This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", medical payments or any injury, loss or damages, including consequential injury, disease or illness, alleged disease or illness, suit, expense or any other damages, for past, present or future claims, nor does this policy provide any duty to defend, arising out of, caused by or contributed to:**

        **. . .**

        **(6)**   **Criminal, Fraudulent, Dishonest or Malicious Acts**

        **from criminal acts, fraudulent, dishonest or malicious acts or omissions by any insured, any employee, leased worker, temporary worker, casual labor or volunteer of any insured or anyone for whom you may be held liable.**

36.     This exclusion negates coverage for criminal acts, fraudulent, dishonest or malicious acts or omissions by the Insured, the Insured's employees, leased workers, temporary workers, or anyone for whom the Insured can be held liable. The underlying petition alleges fraud, as well as statutory fraud. Therefore, the exclusion applies, at a

minimum, to negate coverage for same, and Canopius has no duty to defend and no duty to indemnify in this regard.

> **(h)** **The Fines, Penalties, and Punitive or Exemplary Damages Exclusion**

37.     The Policies also contain a Fines, Penalties, and Punitive or Exemplary Damages exclusion, which provides as follows:

> **(B)** **Fines, Penalties, and Punitive or Exemplary Damages**
>
> **Fines, penalties and punitive or exemplary damages are not covered under this policy nor are any expenses or any obligation to share or repay such fines, penalties or damages with, or to, others.**

38.     This exclusion applies to negate coverage for fines, penalties, and punitive or exemplary damages. The underlying petition alleges gross negligence and also seeks punitive and statutory double/treble damages. Consequently, the exclusion is triggered and negates coverage for same. Canopius has no duty to defend and no duty to indemnify in this regard.

> **(i)** **The Fungi or Bacteria Exclusion**

39.     Finally, the Policies contain a Fungi or Bacteria exclusion, which provides the following:

> **A.** **The following exclusion is added to Paragraph 2. Exclusions of Section I- Coverage A - Bodily Injury And Property Damage Liability:**
>
> **2.** **Exclusions**
>
> **This insurance does not apply to:**
>
> **Fungi or Bacteria**
>
> **a.** **"Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened in-**

halation of, ingestion of, contact with, expo-
sure to, existence of, or presence of, any
"fungi" or bacteria on or within a building or
structure, including its contents, regardless
of whether any other cause, event, material
or product contributed concurrently or in
any sequence to such injury or damage.

b.     Any loss, cost or expenses arising out of the
abating, testing for, monitoring, cleaning up,
removing, containing, treating, detoxifying,
neutralizing, remediating or disposing of, or
in any way responding to, or assessing the
effects of, "fungi" or bacteria, by any insured
or by any other person or entity.

This exclusion does not apply to any "fungi" or
bacteria that are, are on, or are contained in, a good
or product intended for bodily consumption.

B.     The following exclusion is added to Paragraph 2.
Exclusions of Section I- Coverage B - Person- al And
Advertising Injury Liability:

2.     Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a.     "Personal and advertising injury" which
would not have taken place, in whole or in
part, but for the actual, alleged or threatened
inhalation of, ingestion of, contact with,
exposure to, existence of, or presence of any
"fungi" or bacteria on or within a building or
structure, including its contents, regardless
of whether any other cause, event, material
or product contributed concurrently or in
any sequence to such injury.

b.     Any loss, cost or expense arising out of the
abating, testing for, monitoring, cleaning up,
removing, containing, treating, detoxifying,
neutralizing, remediating or disposing of, or
in any way responding to, or assessing the
effects of, "fungi" or bacteria, by any insured
or by any other person or entity.

20

**C.**    **The following definition is added to the Definitions Section:**

**"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.**

40.    This exclusion applies to negate coverage for property damage caused by fungi or bacteria. Fungi is defined by the Policies to specifically include mold or mildew. The underlying petition alleges excessive moisture and water in the residence. Accordingly, to the extent the excessive moisture and water caused fungi, bacteria, mold or mildew damage, the exclusion applies to negate coverage for and Canopius has no duty to defend or indemnify with regard to same.

**(5)    The Policies do not provide insured status to GHI, which is not a business solely owned by the Insured.**

41.    Additionally, and in the alternative, Canopus would show the Court that GHI is not a business owned solely by the Insured and therefore does not receive insured status under the Policies. The Policies do not list GHI as an insured, and Hogan is listed as an "individual" on the Policies. As a result, the Policies will extend insured status to the Insured and any business that is solely owned by the Insured. The applicable Policy provision provides, in relevant part, as follows:

**SECTION II – WHO IS AN INSURED**

**1.    If you are designated in the Declarations as:**

**a.    An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.**

42.    However, because GHI is not solely owned by the Insured, GHI will not be an insured and not entitled to coverage under the Policies. Canopius therefore has no duty to defend and no duty to defend GHI in the underlying lawsuit.

## V.    COUNT I – DECLARATORY JUDGMENT

**Texas Law Is Controlling on the Issues of Coverage Involved in This Action.**

43.    Canopius incorporates each and every allegation in paragraphs 1 through 42 of this Complaint.

44.    The Policy was negotiated and issued in Texas to an insured, Hogan, in Corpus Christi, Texas. This contract for insurance is thus a Texas contract and should therefore be interpreted according to the laws of the State of Texas. Accordingly, Canopius seeks a declaration from the Court that Texas law is controlling on the issues of coverage made the basis of this action.

## VI.    COUNT II – DECLARATORY JUDGMENT

45.    Canopius incorporates each and every allegation in paragraphs 1 through 44 of this Complaint.

46.    The Policies were issued to the Insured based on the representations made to Canopius by the Insured. However, the Insured materially misrepresented her work classification by not revealing her capacity as a general contractor. Canopius does not underwrite insurance policies for general contractors. This is evidenced by the fact that the Policies do not contemplate the risks associated with general contractor operations and do not contain the typical endorsements found in policies issued to contractors. Had the Insured properly disclosed her capacity as a general contractor, no Canopius policy would have been issued to the Insured at all. Because the Insured withheld her general contractor status in an attempt to deceive Canopius, the Policies should be declared void due to a material misrepresentation in the Insured's application for insurance. Accordingly, Canopius seeks a declaration from the Court that the Policies are voided

due to a material representation by the Insured in her application for insurance, and that Canopius therefore owes no duty to defend or indemnify the Insured in the underlying lawsuit brought by Rothschild.

## VII.    COUNT III – DECLARATORY JUDGMENT

47.    Canopius incorporates each and every allegation in paragraphs 1 through 46 of this Complaint.

48.    The Property at issue in the underlying lawsuit was not purchased by the Insured and/or GHI until after the expiration of Policy Number OUS011001190's policy period. As a result, no property damage alleged in the underlying petition by Rothschild could have occurred during said Policy period. The lack of property damage during the policy period means the Insuring Agreement is not triggered, and Policy Number OUS011001190 therefore does not apply. Accordingly, Canopius seeks a declaration from the Court that the Insuring Agreement in Policy Number OUS011001190 is not triggered, that Policy Number OUS011001190 does not afford coverage for the Insured with regard to the underlying lawsuit brought by Rothschild, and that Canopius therefore owes no duty to defend or indemnify the Insured in the underlying lawsuit under Policy Number OUS011001190.

## VIII.    COUNT IV – DECLARATORY JUDGMENT

49.    Canopius incorporates each and every allegation in paragraphs 1 through 48 of this Complaint.

50.    The Property at issue in the underlying lawsuit was purchased in October 2012 and sold on or about March 27, 2013. The policy period for Policy Number

OUS011001776 is from March 2, 2012 to March 2, 2013. As such, the Insured owned the Property at all times that any alleged property damage could have occurred during said policy period. Exclusion j. (1), which negates coverage for property damage to property the Insured owns, is therefore triggered, and Policy Number OUS011001776 does not apply. Moreover, to the extent any property damage is alleged to have occurred prior to the Insured's purchase of the Property, those allegations would not be covered under the Policy's Insuring Agreement. Accordingly, Canopius seeks a declaration from the Court that, pursuant to the Insuring Agreement and exclusion j. (1), Policy Number OUS011001776 does not afford coverage for the Insured with regard to the underlying lawsuit brought by Rothschild, and that Canopius therefore owes no duty to defend or indemnify the Insured in the underlying lawsuit under Policy Number OUS011001776.

## IX.    COUNT V – DECLARATORY JUDGMENT

51.    Canopius incorporates each and every allegation in paragraphs 1 through 50 of this Complaint.

52.    The Policies contain, at a minimum, nine exclusionary provisions that are applicable to and preclude coverage for the allegations in the underlying lawsuit. Specifically, for the reasons previously stated, exclusion j. (1), exclusion j. (2), the Contractual Liability exclusion, the Your Work exclusion, the Impaired Property exclusion, the Oral Contracts exclusion, the Criminal, Fraudulent, Dishonest, or Malicious Acts exclusion, the Fines, Penalties, and Punitive or Exemplary Damages exclusion, and/or the Fungi or Bacteria Exclusion are applicable to the underlying lawsuit. Accordingly, Canopius seeks a declaration from the Court that, pursuant to exclusion j. (1), exclusion j. (2), the Contractual Liability exclusion, the Your Work exclusion, the Impaired Property

exclusion, the Oral Contracts exclusion, the Criminal, Fraudulent, Dishonest, or Malicious Acts exclusion, the Fines, Penalties, and Punitive or Exemplary Damages exclusion, and/or the Fungi or Bacteria Exclusion, the Policies do not afford coverage for the Insured with regard to the underlying lawsuit brought by Rothschild, and that Canopius therefore owes no duty to defend or indemnify the Insured in the underlying lawsuit.

## X.     COUNT VI – DECLARATORY JUDGMENT

53.     Canopius incorporates each and every allegation in paragraphs 1 through 52 of this Complaint.

54.     The Policies do not list GHI as an insured. Hogan is listed as an "individual" on the Policies. As a result, the Policies will extend insured status to a business only if the business is solely owned by Hogan. However, GHI is not a business solely owned by Hogan, and, therefore, the Policies do not afford coverage for GHI as an insured. Accordingly, Canopius seeks a declaration from the Court that the Policies do not afford insured status to GHI, and that Canopius owes no duty to defend or indemnify GHI in the underlying lawsuit brought by Rothschild.

## XI.     JURY TRIAL

55.     Canopius hereby requests a trial by jury. The fee has been or will be paid.

## XII.     PRAYER

WHEREFORE, Plaintiff Canopius US Insurance, Inc. (formerly Omega US Insurance, Inc.) seeks the following relief against Defendants, Kathryn Hogan, Greene Hogan Investments, and Nicholas Rothschild:

(1)     On Count I, a declaration and judgment that Texas law is controlling on the issues of coverage made the basis of this action;

(2)     On Count II, a declaration and judgment that the insured, Kathryn Hogan, made a material misrepresentation to Canopius in her application for

insurance, that Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 are voided due to said material misrepresentation, and that, therefore, Canopius has no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit brought by Nicholas Rothschild;

(3)     On Count III, a declaration and judgment that no property damage alleged in the underlying lawsuit by Nicholas Rothschild occurred during the policy period for Policy Number OUS011001190, that the Insuring Agreement for Policy Number OUS011001190 is not triggered by the underlying lawsuit, and that, therefore, (1) no coverage exists under Policy Number OUS011001190 with regard to the underlying lawsuit, and (2) Canopius has no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit under Policy Number OUS011001190;

(4)     On Count IV, a declaration and judgment that the Insuring Agreement for Policy Number OUS011001776 is not triggered for any property damage alleged in the underlying lawsuit by Nicholas Rothschild to have occurred between the inception of Policy Number OUS011001776 on March 2, 2012 and the purchase of the property at issue in October 2012, that exclusion j. (1) in Policy Number OUS011001776 is triggered and precludes coverage for any property damage alleged in the underlying lawsuit to have occurred while the property at issue was owned by Kathryn Hogan, and that, therefore, (1) no coverage exists under Policy Number OUS011001776 with regard to the underlying lawsuit, and (2) Canopius has no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit under Policy Number OUS011001776;

(5)     On Count V, a declaration and judgment that any property damage alleged in the underlying lawsuit by Nicholas Rothschild that occurred between the inception of Policy Number OUS011002517 on March 5, 2013 and the sale of the property at issue on March 27, 2013 occurred while the property at issue was owned by Kathryn Hogan, that exclusion j. (1) in Policy Number OUS011002517 is triggered by the underlying lawsuit, and that, therefore, (1) no coverage exists under Policy Number OUS011002517 with regard to any alleged damages occurring between March 5, 2013 and March 27, 2013, and (2) Canopius has no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit with regard to any alleged damages occurring between March 5, 2013 and March 27, 2013 under Policy Number OUS011002517;

(6)     On Count V, a declaration and judgment that exclusion j. (2) in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 is triggered, that the exception to exclusion j. (2) requires the entire premises to be work or operations of the insured or on behalf of the insured and is thus not applicable to the underlying lawsuit brought by Nicholas Rothschild because the residential property at issue was already

constructed when purchased and renovated by Kathryn Hogan, and that, therefore (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any alleged property damage arising out of the property sold by Kathryn Hogan, and (2) Canopius has no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any alleged property damage arising out of the property sold by Kathryn Hogan;

(7)     On Count V, a declaration and judgment that the Contractual Liability exclusion in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 precludes coverage for any contractual and/or con-tort liability alleged in the underlying lawsuit brought by Nicholas Rothschild, and that, therefore, (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any alleged contractual and/or con-tort liability in the underlying lawsuit arising out of the sale of property by Kathryn Hogan, and (2) Canopius has no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any such alleged liability;

(8)     On Count V, a declaration and judgment that the Your Work exclusion in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 precludes coverage for any alleged property damage in the underlying lawsuit brought by Nicholas Rothschild arising out of work performed by Kathryn Hogan, and that, therefore, (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any alleged property damage arising out of work performed by Kathryn Hogan, and (2) Canopius owes no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any alleged property damage arising out of work performed by Kathryn Hogan;

(9)     On Count V, a declaration and judgment that the Impaired Property exclusion in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 precludes coverage for any alleged property damage in the underlying lawsuit brought by Nicholas Rothschild arising out of any defect, deficiency, inadequacy, or dangerous condition in Kathryn Hogan's or her sub-contractors' work on the residential property at issue or arising out of a delay or failure by Kathryn Hogan or her sub-contractors to perform in accordance with the contract(s) and/or agreement(s) alleged in the underlying petition, and that, therefore, (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any such property damage, and (2) Canopius owes no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any such property damage;

(10)   On Count V, a declaration and judgment that the Oral Contracts exclusion in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 precludes coverage for any alleged liability assumed by Kathryn Hogan or any other insured under an oral contract, and that, therefore, (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any alleged assumption of liability under an oral contract, and (2) Canopius owes no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any such alleged liability;

(11)   On Count V, a declaration and judgment that the Criminal, Fraudulent, Dishonest or Malicious Acts exclusion in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 precludes coverage for any alleged criminal acts, fraudulent, dishonest or malicious acts or omissions by Kathryn Hogan or any other insured or any employee, leased worker, temporary worker, casual labor or volunteer of any insured or anyone for whom an insured may be held liable, and that, therefore, (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any such alleged acts or omissions in the underlying lawsuit brought by Nicholas Rothschild, specifically including, but not limited to, any allegation of fraud or statutory fraud, and (2) Canopius owes no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any such alleged acts or omissions;

(12)   On Count V, a declaration and judgment that the Fines, Penalties, and Punitive or Exemplary Damages exclusion in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 precludes coverage for any fines, penalties, and punitive or exemplary damages alleged in the underlying lawsuit brought by Nicholas Rothschild, and that, therefore, (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any such fines, penalties or damages in the underlying lawsuit, specifically including, but not limited to, any alleged punitive or exemplary damages or statutory double or treble damages, and (2) Canopius owes no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any such alleged fines, penalties or damages;

(13)   On Count V, a declaration and judgment that the Fungi or Bacteria exclusion in Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 precludes coverage for any alleged damages in the underlying lawsuit brought by Nicholas Rothschild arising out of any form of fungus, mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi, and that, therefore, (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 with regard to any such alleged damages in the underlying

lawsuit, and (2) Canopius owes no duty to defend or indemnify Kathryn Hogan or any other defendant in the underlying lawsuit for any such alleged damages;

(14)   On Count VI, a declaration and judgment that neither Greene Hogan Investments nor any other defendant in the underlying lawsuit brought by Nicholas Rothschild is a business solely owned by Kathryn Hogan, that the Policy only affords insured status to a business if it is solely owned by Kathryn Hogan, and that, therefore (1) no coverage exists under Policy Numbers OUS011001190, OUS011001776, OUS011002517 and OUS011003065 for Greene Hogan Investments or any other defendant in the underlying lawsuit, and (2) Canopius owes no duty to defend or indemnify Greene Hogan Investments or any other defendant in the underlying lawsuit;

(15)   Reasonable attorney fees;

(16)   Taxable costs of court; and

(17)   Such other and further relief as the Court deems just and equitable.

[Signature Block on Following Page]

Respectfully Submitted,

WALKER WILCOX MATOUSEK LLP


By:___/s/ Robbie A. Moehlmann_____
    Robbie A. Moehlmann
    State Bar No. 24007691
    Daniel A. Ray
    State Bar No. 24098306
    1001 McKinney Street, Suite 2000
    Houston, Texas 77002
    Phone: (713) 654-8001
    Fax: (713) 343-6571
    rmoehlmann@wwmlawyers.com
    dray@wwmlawyers.com

**ATTORNEYS FOR PLAINTIFF**